JEAN McNICHOL *v.* RONALD W. McNICHOL

5-5514                                    465 S. W. 2d 98

Opinion delivered April 5, 1971

*Eugene Mazzanti* and *Griffin Smith,* for appellant.

*Hall, Tucker & Lovell,* for appellee.

LYLE BROWN, Justice. This is an unusual child support case. The parties, divorced in 1965, had three minor children. Kenneth, age fourteen years at the time, was retarded. The father was directed to pay $400 a month child support. In 1967 the mother asked that the father take custody of the retarded son. That was done and the child support payment was reduced to $200 a month. In 1970 the mother asked that Kenneth be placed in a school in Louisiana for retarded children and that the father be directed to pay the cost amounting to $300 a month. The chancellor denied the request and the mother appeals, contending that the trial court's denial of her petition was contrary to a preponderance of the evidence.

Appellant Jean McNichol testified that she resides in Whittier, California, where she is a public health nurse. She stated that Kenneth had an I. Q. of sixty-seven which indicated to her that the boy was trainable for some type of employment. On her trip back to Arkansas for the hearing Jean McNichol went to the Easter seal day care center where Kenneth is enrolled. She said she found Kenneth in "a sheltered workshop not learning a trade, doing work there in a simple setting, stuffing envelopes and putting little nuts and bolts and things" together. She found nothing which in her opinion would lead to job placement for Kenneth. She introduced a brochure published by Evergreen Presbyterian School in Louisiana. The brochure described substantial facilities for the training of retarded children. The school had been recommended by a former pastor of the family. The total maintenance costs were estimated to be $300 monthly.

Elizabeth McNichol Worsley testified on behalf of her mother. She has a college degree in sociology and resides in San Antonio, Texas. She had lived in the home with Kenneth until she went away to college. From that experience and from her training in sociology she believed that Kenneth had considerably more potential than the training that the Easter seal school afforded him. She visited the school on the day before the trial. She said Kenneth's supervisor had the boy putting nuts and bolts together and pasting labels on magazines.

Don Wilkerson was called by the mother as an adverse witness. He is a vocational counselor and was Kenneth's supervisor at the rehabilitation center in Conway. It was his opinion. that Kenneth made some progress at Conway but that the staff there "had exhausted every means to get him suitably trained and placed." Mr. Wilkerson said he had no idea as to when the boy would be capable of entering competitive labor, if ever.

Dr. McNichol testified in his own behalf and rather extensively. He is a medical school graduate and specializes in psychiatry. He holds the position of clinical director in charge of the alcoholic rehabilitation service under the State program. His credentials in the field of mental health are quite impressive. He related that when he took custody of Kenneth in 1967 the boy was placed in the Benton unit of the State Hospital and shortly was placed in the rehabilitation service at the same unit. (Kenneth had been a patient in the California State Hospital.) Dr. McNichol was working at the Benton unit. Kenneth remained there from September 1967 until January 1968, and was then transferred to Children's Colony at Conway for further evaluation and training. When the boy was terminated at Conway, the father succeeded in placing him in training with the Easter seal service in Little Rock, as an out-patient. Dr. McNichol obtained lodging for his son at a boarding house specializing in housing mentally retarded men and boys. It is operated by an experienced psychiatric technician. The housing was recommended to Dr. McNichol by the rehabilitation service. It is walking distance of the Easter seal day care center. Kenneth regularly attends a nearby church. The father pays all expenses except spending money, which Kenneth earns by part-time work at the day care center.

It was Dr. McNichol's opinion that it would serve no useful purpose to send Kenneth to Evergreen School, considering his low potential rating. He said Kenneth is making as much progress in his present situation as could be made at any institution. He said the norm of the average boy in Kenneth's condition is sixty-seven

per cent and that Kenneth's capacity is only seventeen per cent of the norm. He thought it would be upsetting to Kenneth to remove him from his present surroundings in Little Rock, where he has made friends and found a limited outlet for recreation. The witness conceded that if he were ordered to place the boy in Evergreen he could afford it financially. However, the doctor is afflicted with multiple sclerosis. The ailment has increased to the point where he cannot get up and down stairs without the use of a wheelchair. He walks with the aid of two canes. Therefore, he reasoned that his ability to earn could well be seriously affected at any time.

We conclude from the chancellor's remarks at the close of the evidence that he was more impressed by the professional evidence given by Don Wilkerson and Dr. McNichol. That testimony warranted the conclusion that Kenneth's chances for improvement were negligible and that to disburb the boy in his present situation would cause a serious setback. The chancellor expressed admiration for the mother in her desire to move Kenneth to what she considered to be a better environment, but said her sincere hopes were not enough to justify a change. If the boy were sent to the school near Minden, Louisiana, he would be far removed from both his parents. Presently the father is only a thirty minute drive away from Kenneth. They correspond and the father occasionally pays Kenneth a visit and keeps in touch with the boy's supervisors, with whom the father is personally acquainted. We are unable to say that the findings of the chancellor are against the preponderance of the evidence.

Affirmed.